

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DAVID A. URBAN,                          )
                                         )
    Plaintiff and                       )
    Counterclaim Defendant,             )
                                         )
v.                                       )   Case No. 03 C 6630
                                         )
UNITED STATES OF AMERICA,                )   Magistrate Judge
                                         )   Martin C. Ashman
    Defendant, Counterclaimant,         )
    and Third-Party Plaintiff,          )
                                         )
SAMY HAMMAD,                             )
                                         )
    Additional Counterclaim             )
    Defendant and Third-Party           )
    Defendant.                          )

## MEMORANDUM OPINION AND ORDER

In a Memorandum Opinion and Order dated January 24, 2006, this Court found that

Plaintiff, David A. Urban, was the prevailing party in his action against Defendant and

Counterclaimant, the United States of America, and was entitled to an award of costs and

attorneys' fees, pursuant to 26 U.S.C.A. § 7430 (hereinafter "Section 7430").[1] Plaintiff now

argues that (1) special factors justify his attorneys' fees, which exceed the statutory maximum,

and (2) discovery sanctions in the form of costs and fees should be imposed against the United

States for its failure to disclose evidence and witnesses in a timely manner. The United States

---

[1] Further background is set forth in this Court's previous opinion, *Urban v. United States*,
No. 03 C 6630, 2006 WL 208712 (N.D. Ill. Jan. 24, 2006), and familiarity with that opinion is
presumed.

not only opposes Plaintiff's motions but also takes issue with some of Plaintiff's itemized expenses, especially Plaintiff's expert witness's billing rate. For the reasons that follow, the Court finds (1) there are no special factors justifying attorneys' fees in excess of the statutory maximum but Plaintiff's fee and cost requests are otherwise reasonable, and (2) limited discovery sanctions are appropriate.

## I. Background

After obtaining a jury verdict and judgment in his favor, Plaintiff filed a motion for costs and attorneys' fees pursuant to Section 7430, as well as a motion for discovery sanctions. In an attempt to conserve judicial resources, maximize efficiency and encourage settlement, the parties asked this Court to resolve the threshold legal question of whether Urban is a prevailing party under Section 7430 before addressing the reasonableness of the amount of attorneys' fees sought. The Court acquiesced and, on January 24, 2006, found that the United States was not substantially justified in its prelitigation or litigation conduct in this case and that Plaintiff is a prevailing party under Section 7430. *Urban*, 2006 WL 208712, at *9-10. Under Section 7430, a prevailing party may recover fees from the United States and Plaintiff now presses forward with his fee request.

Plaintiff seeks an award of fees at a rate of $225.00 per hour for most of his attorneys' fees, $1988.96 for expert witness compensation, (Pl.'s Reply Supp. Fees at 13), and a total award of $388,839.19. (Pl.'s Suppl. Fee Report, May 25, 2006, at 2.) Plaintiff also seeks discovery sanctions in the amount of $43,662.75. (Pl.'s Reply Supp. Sanctions at 14.) The United States objects to Plaintiff's request for fees on the grounds that: (1) Plaintiff seeks an hourly rate greater

- 2 -

than that allowed by statute; (2) Plaintiff is not entitled to fees related to unsuccessful and unnecessary litigation; (3) Plaintiff is not entitled to fees related to clerical work; and (4) Plaintiff is not entitled to full reimbursement for the services of his expert witness because the rate of such fees is statutorily capped and limited to reasonable fees. (United States's Opp'n Fees at 1-2.) The United States also opposes Plaintiff's request for discovery sanctions. (United States's Resp. Sanctions at 1-2.)

## II. Discussion

### A. Plaintiff's Motion for Costs and Fees

#### 1. No Special Factors

Under Section 7430, attorneys' fees shall not exceed $150.00 per hour for services performed between 2002 and 2005 and $160.00 per hour for work performed during 2006[2] unless the court determines that a special factor, such as the limited availability of qualified attorneys, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies the higher rate. 26 U.S.C.A. § 7430(c)(1)(B)(iii). Limited availability of qualified attorneys for the proceedings involved refers to the number of attorneys who have some distinctive knowledge of specialized skill needful for the litigation in question, as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). Thus, special factors refer to nonlegal or technical abilities such as

---

[2] The statute caps reasonable attorney fees at $125.00 per hour. 26 U.S.C. § 7430(c)(1)(B)(iii). After making cost of living adjustments, however, both parties agree that the current rates are $150.00 per hour for work performed between 2002 and 2005, and $160.00 per hour for work performed in 2006.

expertise in distinct areas of the law, such as patent law, foreign law, or expertise in unique areas of business, such as horse training. *Id.*; *Bode v. United States*, 919 F.2d 1044, 1051 (5th Cir. 1991) (suggesting that expertise in the Texas quarter horse industry may constitute specialized knowledge). Special factors do not include other types of substantive specializations currently proliferating within the profession. *Perales v. Casillas*, 950 F.2d 1066, 1078 (5th Cir. 1992) (interpreting *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)).

Plaintiff argues that special factors exist in this particular case because the underlying issues required a distinctive knowledge of trust fund penalty law and a specialized skill in tax litigation. Plaintiff claims that his attorneys have distinctive knowledge in the areas of trust fund penalty law because (1) A.G. Orlowsky is an attorney and CPA with expertise in tax disputes, including trust fund penalty controversies, (2) Patricia Deemer has developed specialized knowledge of trust fund penalty law and is an experienced litigator, and (3) Christopher Goodsnyder is an expert in business law and is an experienced litigator. (Pl.'s Suppl. Mem. for Fees, Mar. 20, 2006, at 11.)

As an initial matter, the Court disagrees with Plaintiff's characterization of this case. The key issues at trial were (1) did Plaintiff sign the Form 2750 waiver in question, (2) did Plaintiff exercise control over All American Corporation ("AAC"), and (3) did Plaintiff know that AAC failed to pay taxes during the years in question. *Urban*, 2006 WL 208712, at *2. Resolution of these issues turned on the authenticity of the signature on the photocopied Form 2750 waiver, witness credibility, and a basic review of AAC's financial documents, filings and records. *Id.* at *3-6. In short, this case did not require attorneys with special skills but rather lawyers with general lawyerly knowledge and ability useful in all litigation.

- 4 -

Even if this case did require attorneys with specialized skills, Plaintiff has not shown that Orlowsky, Deemer, or Goodsnyder possess such expertise. First, Goodsnyder does not actually purport to have specialized skills other than extensive business law experience that proved useful in this case. There is no shortage of general business litigators, however, and their skills cannot be considered specialized knowledge. Next, Orlowsky and Deemer purport to be tax experts with specialized knowledge in trust fund penalty law. A specialization in tax law, however, is generally considered too common within the legal profession to constitute a special factor. *Bode*, 919 F.2d at 1050; *In re Abernathy*, 158 B.R. 749, 754 (Bankr. N.D. Ill. 1993). Furthermore, because Section 7430 applies only to proceedings against the United States in connection with the determination, collection, or refund of any tax, if tax law constitutes a specialized skill, attorneys' fees in excess of the statutory rate could be recovered in virtually every case where Section 7430 applies. *Id.* In short, recognizing a tax law exception in this Section 7430 case would effectively swallow the rule.

Finally, assuming *arguendo* that tax law expertise does constitute a special factor, the evidence does not suggest that Orlowsky or Deemer is a tax expert. Deemer claims that she cultivated trust fund penalty expertise since joining Orlowsky in 2002 (the year before this case was filed) and Orlowsky claims tax expertise based on his certification as a public accountant. Neither Orlowsky nor Deemer hold themselves out to be a tax lawyer in Martindale-Hubbell listings, however, and neither has any tax cases reported in Westlaw's electronic database. Because Deemer presents weak evidence of expertise and Orlowsky's CPA does not automatically equate to expertise in tax law, and because there is evidence to suggest that neither

attorney holds himself out as a tax specialist, the Court rejects this claim due to lack of evidence of specialized knowledge.

Plaintiff cites to *Franz v. United States*, No. 91 C 419, 1994 WL 142418 (N.D. Ill. Mar. 1, 1994), and *In re Brickell Inv. Corp.*, No. 87-02413-BKC-SMW, 1993 WL 735789 (Bankr. S.D. Fla. Sept. 24, 1993), and argues that tax specialization may constitute a special factor and Deemer and Orlowsky are tax experts. In *Franz*, the district court found a tax attorney to have specialized knowledge justifying an hourly rate above the statutory limit. 1994 WL 142418, at *4. The government appealed that award, however, and, as acknowledged by both parties in open court, the tax attorney ultimately settled out of court for the statutory maximum. (Oral Arg., May 31, 2005.) In *Brickell Inv. Corp.*, a bankruptcy court found special factors existed where debtor's counsel was expert in tax law, bankruptcy law, and litigation, and debtor could not obtain such services without paying rates over and above the statutory maximum. 1993 WL 735789, at *4, 10. Unlike *Brickell Inv. Corp.*, the case at bar does not involve multiple specialties nor extenuating financial considerations. To whatever extent the holding in *Brickell Inv. Corp.* cannot be differentiated from the case at bar, the Court is content to simply disagree with the decision in *Brickell Inv. Corp.*, having found other case law more persuasive. Unconvinced by *Franz* or *Brickell Inv. Corp.*, the Court rejects Plaintiff's arguments.

This case did not require specialized knowledge and Plaintiff's attorneys have not demonstrated specialized knowledge beyond general lawyering skills, so Plaintiff is not entitled

to reimbursement above the statutory rate of $150.00 per hour for work performed from 2002 to 2005, and $160.00 per hour for work performed in 2006.[3]

## 2. No Exceptional Results

Plaintiff suggests that the exceptional results obtained by his attorneys amount to a special factor justifying reimbursement above the statutory rate. Some courts find special factors and increase fee awards where an attorney is instrumental in obtaining exceptional results. *See Bode*, 919 F.2d at 1051-52. When performing an exceptional results analysis, focusing on the value added by the attorney himself makes sense, lest every victory under Section 7430 result in reimbursement above the statutory rate. In this case, the Court agrees that Plaintiff obtained total victory and won his case hands down. This result was not truly exceptional, however, as the government's case was not substantially justified, which is why Plaintiff will be reimbursed for his fees and costs at all. As stated above, this case involved simple issues and weak evidence and, while Plaintiff's attorneys certainly earned all of the fees and costs billed to Plaintiff, the attorneys were not instrumental in obtaining exceptional results. It follows that the result in this case does not warrant increasing the statutory rate.[4]

___

[3] Plaintiff also argues that attorneys specializing in tax law often charge much more than his attorneys' $225.00 per hour rate, so he could not find adequate counsel for less than $225.00 per hour. As this case did not require specialized knowledge and Plaintiff's attorneys did not demonstrate specialized skills, the fact that attorneys specializing in tax law charge more than Plaintiff's lawyers does not convince the Court that Plaintiff could not find adequate counsel for less than Plaintiff's attorneys' rates.

[4] This holding does not downgrade the performance of Plaintiff's lawyers. On the contrary, Plaintiff's lawyers were solidly competent and professional, which constitutes this Court's highest praise. Further, any diminution of their requested fees pursuant to a statutory cap does not impair their rights to collect their full fees from their client, the Plaintiff.

### 3. Plaintiff's Motions Were Reasonable.

The United States argues that Plaintiff may only be reimbursed for reasonable fees for
issues on which he is successful. First, the United States seeks to deny Plaintiff compensation
for work performed on five motions that sought to exclude evidence of the Form 2750 waiver.
According to the United States, Plaintiff's initial effort to exclude this evidence was rebuffed
when the Court denied Plaintiff's motion for leave to file an amended complaint to add a
spoliation claim, (Dkt. No. 21), and Plaintiff's five subsequent motions—(1) motion for
discovery sanctions, (Dkt. No. 47), (2) motion to bar use of waiver or secondary evidence
thereof, (Dkt. No. 68), (3) motion in limine to exclude testimony of Ardella McKinzie, (Dkt.
No. 106), (4) motion in limine to exclude testimony of Marilyn Ganser, (Dkt. No. 107), and
(5) motion for discovery sanctions (currently pending), (Dkt. No. 160)—unreasonably and
unsuccessfully sought identical relief. (United States's Opp'n Fees at 12, Ex. 2.)

Where a party makes an unreasonable argument that necessitates further proceedings the
Court may deny compensation for those proceedings. *Jaffee v. Redmond,* 142 F.3d 409, 416 (7th
Cir. 1998). When assessing the reasonableness of arguments, however, courts must consider the
litigation in its entirety and determine whether the expenditure of counsel's time was reasonable
in relation to the success achieved. *Id.* (internal citations omitted); *Quinones v. City of Evanston,*
No. 91 C 3291, 1995 WL 656690, at *2 (N.D. Ill. Nov. 6, 1995) (awarding full compensation for
all work performed where prevailing party in Section 1983 case proceeded under alternative legal
theories, despite the fact that certain theories were rejected). When plaintiffs attain success,
courts should not decline to award fees to the plaintiffs' attorneys solely because certain zealous
advocacy that was appropriately provided their clients did not contribute directly to that success.

- 8 -

*Jaffee*, 142 F.3d at 417. Plaintiffs are not to be denied full attorneys' fees merely because they lost some interim rulings en route to ultimate success. *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 770 (7th Cir. 2004). "Such set backs are well-nigh inevitable." *Id.*

The Court finds that Plaintiff was justified in filing the motions in question. As an initial matter, Plaintiff's Motion for Leave to File an Amended Complaint for Spoliation of Evidence was not entirely unsuccessful. Although the Court denied the motion, Plaintiff successfully argued that the IRS bore the ultimate burden at trial of establishing that the relevant statute of limitation was waived; a ruling that would help frame the parties' litigation strategies throughout the remainder of the case. *Urban v. United States*, 392 F. Supp. 2d 1018, 1025 (N.D. Ill. 2005). The subsequent motions were justified on the following grounds:

(1) Plaintiff's pretrial motion for discovery sanctions, which also sought to exclude evidence of the Form 2750 waiver, was not unreasonable nor fruitless. The pretrial motion for discovery sanctions was based on a legal theory other than spoliation of evidence and was a legitimate attempt to force the United States to take responsibility for losing the original waiver and causing harm to Plaintiff. While that motion was denied, in response to Plaintiff's concerns, the Court required the United States to produce a "detailed affidavit" regarding the government's efforts to find the waiver. (Dkt. No. 48.) Production of this affidavit resulted in disclosure of Rodney Joseph and ultimately the SPIRIT computer system and Marilyn Ganser.

(2) Plaintiff's motion in limine to bar use of the waiver was reasonable. In that motion, Plaintiff relied on the best evidence rule and challenged the United States's position that Plaintiff's original waiver was not necessarily lost. In its response brief, the United States argued for the first time that the waiver should be treated as lost and relied on newly disclosed evidence

from Joseph, Ganser, and the SPIRIT computer system.[5] Because the Court denied Plaintiff's motion based, in part, on the expected testimony of Samy Hammad, who did not testify at trial, *Urban v. United States*, No. 03 C 6630, 2005 WL 1819954, at \*2 (N.D. Ill. June 9, 2005), and because Plaintiff's motion dealt with new legal theories and ultimately new evidence, the Court finds the motion and time spent on the motion to be reasonable.

(3) Plaintiff's motion in limine to exclude the testimony of Ardella McKinzie argued that McKinzie's testimony, computer history notes, and notes regarding conversations with others, including Rodney Joseph, constituted inadmissible hearsay evidence under Federal Rule of Evidence 801. Although the motion in limine was denied, the United States ultimately chose not to call McKinzie to testify (though she remained on their witness list until trial) and removed her history notes from the exhibit binder used at trial. The Court agrees with Plaintiff that this motion was merely a loss of an interim ruling en route to ultimate success.

(4) Plaintiff's motion in limine to exclude testimony of Marilyn Ganser and any evidence of computer entries or data pertaining to any Form 2750 waiver purportedly signed by David Urban and any testimony of Rodney Joseph pertaining to a sequencing system regarding receipt of Form 2750 waiver related directly to the United States's failure to disclose the existence of the SPIRIT transcripts and tracking numbers and the identities of Ganser and Joseph in a timely manner. Although the motion in limine was denied, the Court suggested that Plaintiff's complaints might be legitimate and encouraged Plaintiff to revisit the issue with a post-trial

---

[5] The Court also notes that in briefs opposing Plaintiff's earlier motions regarding the Form 2750 waiver the United States claimed that Plaintiff's arguments were appropriate for a motion in limine.

motion for sanctions. Accordingly, Plaintiff's motion was not entirely unsuccessful, nor a futile attempt to obtain relief already denied him, nor considered inappropriate by the Court.

(5) Plaintiff's post-trial motion for sanctions, which was filed, in part, at the suggestion of this Court, has not yet been ruled upon, does not seek to exclude evidence, and is not unreasonable.

Based on the above, the Court concludes that Plaintiff was justified in filing all of the motions in issue. Plaintiff's motions reflect alternative legal theories, zealous advocacy, and minor set backs en route to ultimate success, not unreasonable or futile attempts to obtain identical relief from the Court.

### 4.    Fees for Legal Assistants and Accountant

Plaintiff originally sought fees for services performed by legal assistants. Plaintiff has withdrawn this request, (Pl.'s Reply Supp. Fees at 12), so those fees are denied. The parties also agree that Plaintiff should be compensated $1,507.50 for the 9.75 hours of legal work performed by accountant Sophia Ma. (United States's Opp'n Fees, Ex. 1; Pl.'s Reply Supp. Fees at 14.)

### 5.    Fees for Expert Witness

The United States argues that, under Section 7430, Plaintiff's handwriting expert, Robert Webb, may not be compensated at a rate above $80.52 per hour—the rate paid to the United States's handwriting expert, Ms. Machelle Reid—and should be compensated at $50.00 per hour because his qualifications and experience are far inferior to Reid's. (United States's Opp'n Fees at 13-14.) Specifically, the United States suggests Webb's services were less valuable because

- 11 -

(1) unlike Reid, Webb was not certified by the American Board of Forensic Document Examiners ("ABFDE"), (2) Webb had accrued only five hundred hours of training since 1988, which is much less than the two years of training needed in order to be qualified to be certified by the ABFDE, and (3) Webb did not actually author two publications listed on his resume. (Id.) Plaintiff rejects the United States's attempt to devalue Webb's services and argues that his work should be compensated at the $80.00 per hour rate. (Pl.'s Reply Supp. Fees at 13.)

Under Section 7430, Plaintiff may recover "the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States." 26 U.S.C. § 7430(c)(1)(B)(i). The parties agree that the highest rate of compensation for expert witnesses paid by the United States in this case, and therefore the statutory maximum reimbursement in this case, amounts to approximately $80.00 per hour. (Pl.'s Reply Supp. Fees at 13.) Furthermore, the United States estimates that Webb spent 24.8 hours working on this case, (United States's Opp'n Fees, Ex. 3), and Plaintiff agrees. (Pl.'s Reply Supp. Fees at 13.)

The United States now proposes the arbitrary compensation rate of $50.00 per hour for Webb's services because his expert credentials are allegedly flawed. (United States's Opp'n Fees at 14.) At trial, however, this Court ruled that Webb was a qualified expert witness and admitted his deposition and testimony. Furthermore, while the United States may find Webb's resume less impressive than Reid's, Webb's conclusions and testimony were almost identical to Reid's. Given that Webb was accepted as an expert witness and offered credible testimony that was consistent with the United States's expert's testimony, the Court finds no grounds for questioning the legitimacy of Webb's compensation at this late date. Accordingly, Plaintiff will be compensated

for Webb's services at $80.00 per hour for 24.8 hours of work.[6] Because $80.00 of Plaintiff's expert fees is payable as a taxable cost under the statute, Plaintiff's compensation for expert fees comes to $1,904.00.

### 6.     Time Spent Litigating Attorneys' Fees

The United States argues that, if Plaintiff does not prevail on his special factors arguments, he may not be compensated for time spent litigating the attorneys' fee issue now before the Court because (1) this Court bifurcated the issues of substantial justification and special factors, so litigation over special factors is no longer part of Plaintiff's case against the United States, and (2) the United States made a settlement offer to compensate Plaintiff at the statutory maximum for attorneys' fees and Plaintiff's unjustifiable refusal to accept that offer caused the instant litigation. (United States's Sur-Reply Opp'n Fees at 6-7.) The United States concludes that Plaintiff is not entitled to compensation for any fees incurred after January 24, 2006, the date the substantial justification decision was rendered. (United States's Opp'n Fees at 11.)

The Court disagrees with the United States's reasoning and finds that Plaintiff did not forfeit his right to fight for fee compensation when he agreed to bifurcate the substantial justification and special factors issues. The parties encouraged the Court to bifurcate the substantial justification and special factors issues in order that the parties might resolve their

_____

[6] Plaintiff's request for $3,070.00 in expert fees and costs, which is based on Webb's (1) Retainer (June 2004) for $400.00, (2) Fee for Deposition, Travel, Time and Mileage (September 1, 2005) $1,280.00, and (3) Testimony (September 19, 2005) for $1,390.00, will be reduced accordingly.

differences out of court once they had a better sense of their potential liability and exposure. Unfortunately, that did not happen. As a prevailing party, however, Plaintiff is entitled to recover all attorneys' fees and expenses reasonably incurred in connection with the vindication of his rights, including those related to litigation over fees. *See Miller v. Alamo*, 983 F.2d 856, 862 (8th Cir. 1993); *Bode*, 919 F.2d at 1052. Plaintiff did not waive any rights or arguments when he agreed to bifurcation. The Court finds that Plaintiff's motions for fees have been filed in good faith and will not punish Plaintiff for attempting to preserve judicial resources and increase efficiency in this case.

The United States argues that litigation fees relating to special factors would have been avoided entirely if Plaintiff had not pushed forward with his unjustifiable claim for enhanced attorneys' fees. According to the United States, had Plaintiff conceded the special factors issue, the parties most likely would have settled their remaining differences and avoided costly litigation. Because Plaintiff's special factors arguments have now been rejected, the United States argues that all costs relating to that issue are unreasonable and not covered by Section 7430.

The Court again disagrees with the United States's reasoning. Although the United States offered to compensate Plaintiff up to the statutory maximum for his attorneys' fees, Plaintiff was nonetheless entitled to litigate the issue. Significantly, the parties did not reach agreement on the fees and costs issues and, while attorneys' fees may constitute the bulk of the parties' dispute, other outstanding issues may have prevented settlement. Having failed to reach an agreement on fees and costs, Plaintiff was entitled to litigate the issue, regardless of concessions made by the

United States. It follows that this round of litigation was not unreasonable and Plaintiff's attorneys' fees are reasonable and covered by Section 7430.

## B. Plaintiff's Motion for Discovery Sanctions

Plaintiff filed a motion for sanctions claiming that the United States (1) failed to disclose the identity and testimony of Rodney Joseph in a timely manner, (2) failed to disclose the identity and testimony of Marilyn Ganser in a timely manner, and (3) failed to disclose the existence of the SPIRIT computer system and records created by the SPIRIT system in a timely manner. (Pl.'s Mot. Sanctions at 6-9.) The United States rejects Plaintiff's call for sanctions and argues that Joseph and the SPIRIT system were made known to Plaintiff a year before trial and Ganser was disclosed to Plaintiff six months before trial. (United States's Resp. Sanctions at 8-9.) The United States also argues that Plaintiff is seeking to recover fees for unreasonable motions that sought to obtain a "windfall" by excluding the United States's evidence at trial.

### 1. Background

Pursuant to Court order of January 15, 2004, discovery in this case closed on September 30, 2004. On February 12, 2004, the United States provided its Initial Disclosures, pursuant to Rule 26 of the Federal Rules of Civil Procedure, without providing any documents. The list of individuals "likely to have discoverable information that the United States may use to support its claims or defenses" did not include either Rodney Joseph or Marilyn Ganser. Moreover, neither Joseph nor Ganser were disclosed in subsequent responses to interrogatories or supplemental responses or disclosures. (Pl.'s Mot. Sanctions, Exs. 1-2.) Additionally, when the United States

- 15 -

did provide Plaintiff with documents, the SPIRIT computer transcripts were not included in the list of documents, data compilations, and tangible things, produced pursuant to Rule 26(a)(1)(B). (Pl.'s Mot. Sanctions, Exs. 3-4.) There is no question that such records were well within the scope of the Initial Disclosures contemplated by Rule 26, the interrogatories, document requests, and requests to admit served on the United States during the discovery period.

In January 2005, in response to Plaintiff's pretrial motion for sanctions, the Court reopened discovery in order for the United States to submit an affidavit relating its efforts to locate the Form 2750 waiver. In early March 2005, the United States submitted a declaration from Rodney Joseph in which Joseph explains, among other things, that he was in charge of the Form 2750 waivers for the Chicago area from 1981 until he retired in 2004. While there had been a few scattered references to Joseph in the thousands of pages of discovery previously produced by the United States, the March 2005 declaration was the first clear indication of Joseph's potentially significant role in this case.

On March 10, 2005, Plaintiff moved to compel the deposition of Joseph. The United States opposed the motion, arguing that Plaintiff's motion was untimely because Plaintiff already knew about Joseph, discovery was closed, and Plaintiff needed to file official requests with the IRS before he could depose an IRS employee.[7] The Court found that the United States had not properly disclosed Joseph and granted Plaintiff's motion. At Joseph's deposition, Joseph

---

[7] The United States suggests that Plaintiff's motion to compel was untimely because the deadline for deposing Joseph had not yet passed. In light of the fact that (1) the United States opposed Plaintiff's motion on the grounds that Joseph had been disclosed before discovery closed on September 30, 2005, and that Plaintiff must file a special request to depose IRS agents, and (2) Plaintiff was pressed for time given the late date of Joseph's disclosure, the Court is not persuaded by this argument and does not find Plaintiff's motion to compel unnecessary or unreasonable.

described the SPIRIT computer tracking system that he set up for the purpose of tracking and recording Form 2750 waivers. This was the first time that Plaintiff was informed of the SPIRIT tracking system and the existence of the SPIRIT transcripts. In fact, as late as March 4, 2005, the United States had assured Plaintiff that "the government has produced to you any and all computer logs . . . that it has been able to find." (Pl.'s Mot. Sanctions, Ex. 6.)

Following Joseph's deposition, the United States contacted Joseph's successor at the IRS, Marilyn Ganser, and asked her to search IRS files for evidence of Plaintiff's Form 2750 waiver. Discussions with Ganser revealed that Form 2750 waivers entered into the SPIRIT computer system were assigned serial numbers that might be significant in determining the date on which a waiver was received by the IRS and/or entered into the SPIRIT computer system. (United States's Resp. Sanctions, Ex. D.) Ultimately, on April 28, 2005, the United States produced for Plaintiff documentation and information pertaining to the SPIRIT computer system. (Id.) And on May 26, 2005, Plaintiff received SPIRIT documents that included serial numbers assigned to the waivers in the SPIRIT system. (United States's Resp. Sanctions at 5.) Plaintiff filed several motions to exclude this evidence from the trial but those motions were denied by this Court due to lack of trial prejudice. In denying Plaintiff's motions, however, the Court did not rule out the possibility of awarding sanctions for discovery violations at a later date.

### 2. Untimely Disclosures Constitute Discovery Violations.

Plaintiff complains that the United States violated Rules 26 and 33 of the Federal Rules of Civil Procedure when it failed to diligently investigate and disclose evidence and witnesses, failed to supplement its discovery requests in a timely manner, and failed to direct Plaintiff to

- 17 -

documents containing answers to interrogatories. Plaintiff argues that, as a result of the United States's discovery violations, he was forced to (1) file his March 10, 2005 motion to compel, (2) file his April 12, 2005 motion in limine, (3) file his June 27, 2005 motion to exclude testimony of Marilyn Ganser, and (4) spend a lot of attorneys' time and resources on unnecessary strategies, motions, and trial preparation.

Under Rule 26, parties are required to disclose the name of each individual likely to have discoverable information that the disclosing party may use in support of their claims. Fed. R. Civ. P. 26. Rule 26 also requires a party to supplement or amend its discovery disclosures when and if the disclosure is found to be incomplete and if the corrective information was not otherwise made known to the other party during the discovery process. Id. Under Rule 33, where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained. Fed. R. Civ. P. 33. However, such specification must contain sufficient detail to permit the interrogating party to locate and identify, as readily as the party being served, the records from which the answer may be ascertained. Id. A party that fails to properly disclose information required by Rule 26 and Rule 33 may face sanctions. Specifically, in accordance with Rule 37 of the Federal Rules of Civil Procedure and the inherent powers of the Court, the Court has discretion to impose discovery sanctions, such as fee awards, costs, evidentiary presumptions and exclusions, and dismissal of claims. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991). Sanctions are intended to ameliorate prejudice caused to an innocent party by a discovery violation, punish the party that violated its obligations, and/or deter other from committing

similar violations. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Spina v. Forest Pres. of Cook County*, No. 98 C 1393, 2001 WL 893842, at \*3 (N.D. Ill. Aug. 7, 2001). When determining what sanctions are appropriate courts generally consider (1) the success of the moving party, (2) prejudice to the party, (3) ability to cure prejudice, and (4) bad faith or willfulness. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiff correctly argues that Joseph was not disclosed in a timely manner. Whether and when the IRS received Plaintiff's waiver was a core issue in this case so the testimony and knowledge of the IRS employee in charge of the relevant Form 2750 waivers was obviously of the utmost importance. Although it did not constitute a large part of his job, Joseph created the SPIRIT system and was in charge of entering Form 2750 waivers into the SPIRIT system from 1981 until 2004, which covers all relevant dates in this case. Despite the obvious need to question Joseph about his actions and those of his department, the United States failed to identify Joseph as a witness until five months after the close of discovery. While Joseph's name appeared in McKenzie's AAC history notes and on bates-stamped pages 1193 and 1194, and Plaintiff even mentioned Joseph in passing during his deposition of McKenzie, these references were scattered and never suggested that Joseph played any significant role or could offer any significant testimony in this case. Furthermore, the United States's response to Plaintiff's interrogatory, which stated that the identities of all relevant witnesses were contained in documents submitted to Plaintiff, was not nearly specific enough to comply with Rule 26 or Rule 33. Given Joseph's central role in this case, the United States's lack of diligence in identifying Joseph sooner is a sanctionable discovery violation. Although the prejudice caused by this violation did not warrant

excluding evidence at trial, Plaintiff was harmed by the United States's lack of diligence and is entitled to an award of certain fees and costs.

The United States also did not disclose information or evidence relating to the SPIRIT computer system in a timely manner. Despite the United States's assurances in March 2005 that Plaintiff has "all computer logs," the United States produced documentation of the SPIRIT system and the SPIRIT systems tracking serial numbers in April and May 2006, respectively. While the "SPB computer system"—another name for the SPIRIT computer system—was referenced in previously disclosed documents, because it was not clear that SPB was the same as SPIRIT, nor that the SPIRIT system was used for cataloging waivers and even used tracking serial numbers, the SPIRIT computer system was not properly disclosed. Without knowing about the SPIRIT system and serial numbers Plaintiff could not make necessary inquiries and could not properly assess the significance of the evidence in this case. Tellingly, when the United States inquired about the SPIRIT system, the IRS immediately produced relevant evidence and documentation. (United States's Resp. Sanctions at 4-5.) The Court did not find sufficient prejudice to justify excluding the SPIRIT evidence at trial but does find that Plaintiff was harmed by the United States's discovery violation. The Court concludes that Plaintiff is entitled to an award of certain fees and costs resulting from this violation.

Finally, the Court finds that the United States did not identify Marilyn Ganser in a timely manner. Ganser worked and shared an office with Joseph, and was familiar with the SPIRIT system, IRS storage of original Form 2750 waivers, and the original search for Plaintiff's Form 2750 waiver. (United States's Resp. Sanctions, Ex. H.) After Joseph retired, Ganser was the only advisor in charge of IRS litigation in Chicago. (Id.) Ganser was not contacted by the

Department of Justice in anyway before April 2005, approximately seven months after the close of discovery. (Id.) Not surprisingly, when the United States finally decided to interview Ganser, new and significant evidence came to light, including the SPIRIT serial numbers used to track waivers. (United States's Resp. Sanctions at 4-5.) Considering Ganser's responsibilities at the IRS and her familiarity with this case, IRS operations, and the SPIRIT computer system, the United States should have interviewed and disclosed Ganser and what she knew before the close of discovery. While the Court did not grant Plaintiff's motion to exclude Ganser's testimony and evidence of the SPIRIT serial numbers at trial, the Ganser discovery violations harmed Plaintiff and warrant an award of certain fees and costs.

### 3. Sanctions Award

There is no evidence to suggest that the United States's failure to properly disclose Joseph, Ganser, or the SPIRIT computer system was done in bad faith, therefore, sanctions are limited to those costs and fees directly attributable to the lateness of the disclosure. Plaintiff's March 10, 2005 Motion to Compel Joseph's deposition was directly attributable to the United States's discovery violation, as was Plaintiff's June 27, 2005 Motion in Limine to Bar the United States from Calling Marilyn Ganser as a Witness at Trial and/or Introducing the SPIRIT Computer Transcripts at Trial, so all attorneys' fees relating to these two motions are recoverable. Approximately half of Plaintiff's April 12, 2005 Motion in Limine to Bar the Use of Secondary Evidence of the Existence of the Original Form 2750 Waiver was directly attributable to the United States's discovery violations—especially Plaintiff's reply brief. The April 12, 2005 motion did not set out to address discovery violations but, in its May 9, 2005 response to the

motion, the United States relied heavily on statements from Joseph and Ganser. (United States's Resp. Pl.'s April 12, 2005 Mot. at 4-6.) As a result, Plaintiff spent much of his May 23, 2005 reply brief addressing the untimely disclosure of Joseph, Ganser, and the SPIRIT computer system. (Pl.'s Reply Supp. Pl.'s April 12, 2005 Mot. at 1-7.) Accordingly, half of Plaintiff's attorneys' fees relating to that motion are recoverable. Finally, Plaintiff's attorneys' fees for the instant motion for discovery sanctions are directly related to discovery violations and are recoverable.[8]

All other costs and fees are not directly related to the United States's discovery violations and are excluded from the sanctions. For instance, as Joseph's deposition would have gone forward even if he had been disclosed in a timely manner, fees relating to the deposition, preparation for the deposition, and negotiations regarding Joseph's testimony are not included in the sanctions. For the same reason, negotiations regarding Ganser's testimony are not included in the sanctions either.

Based on the above, Plaintiff is entitled to: (1) all twelve hours of attorneys' fees for Plaintiff's March 10, 2005 Motion to Compel the deposition of Rodney Joseph, (Pl.'s Mot. Sanctions, Ex. 11, Reference Nos. 35-43, 48-49), at $225.00 per hour, (2) all sixteen hours of attorneys' fees for Plaintiff's June 27, 2005 Motion in Limine to Bar the United States from Calling Marilyn Ganser as a Witness at Trial and/or Introducing the SPIRIT Computer Transcripts at Trial, (Id., Reference Nos. 66, 73, 90-94), at $225.00 per hour, (3) half of the fifty-five hours of attorneys' fees for Plaintiff's April 12, 2005 Motion in Limine to Bar the Use

---

[8] The Court rejects out-of-hand the United States's suggestion that Plaintiff could have saved time and money by stipulating that the IRS received the Form 2750 waiver and ignoring the United States's discovery violations. (United States's Resp. Sanctions at 15-16.)

of Secondary Evidence of the Existence of the Original Form 2750 Waiver, (Id., Reference Nos. 23-24, 30, 32-34, 50-55, 57, 67-72, 74-86, 88), at $225.00 per hour, and (4) all forty-two hours of attorneys' fees for Plaintiff's instant motion, (Id., p. 4), at $225.00 per hour. Thus, Plaintiff's sanctions award for 97.5 hours of attorneys' work amounts to $21,937.50.[9]

### 4. Total Award of Fees, Costs and Sanctions

Plaintiff's total award of fees, costs, and sanctions includes: (1) $239,587.50 for 1,597.25 hours of attorney work between 2002 and 2005; (2) $20,760.00 for 129.75 hours of attorney work in 2006;[10] (3) $1,904.00 for expert fees; (4) $1,507.50 for Sophia Ma's services, (5) $2,458.95 in other nontaxable costs through April 2006;[11] (6) $21,937.50 in sanctions, of which $14,625.00 is already included in work performed. Plaintiff's total award amounts to $273,530.45.[12]

---

[9] Plaintiff was already awarded $150.00 per hour for all of the work in question because he is a prevailing party and because his fee request was reasonable. For these 97.5 hours, however, Plaintiff will receive $225.00 per hour.

[10] From 2002 to 2005, Orlowsky worked 113.75 hours, Deemer worked 1,099.25 hours, and Goodsnyder worked 384.25 hours. (Pl.'s Reply Supp. Fees, Ex. 2.) From January 2006 to May 2006, Orlowsky worked 6.5 hours, Deemer worked 108 hours, and Goodsnyder worked 15.25 hours. (Pl.'s Suppl. Fee Report, May 25, 2006, at 3, Ex. 2.)

[11] Plaintiff sought $5,528.95 in nontaxable costs through April 30, 2006, which included $3,070.00 in expert witness fees. (Pl.'s Reply Supp. Fees at 13.) Having dealt with the expert witness fees separately, the Court finds that Plaintiff is entitled to $2,458.95 in other nontaxable costs through April 2006.

[12] This total does not include the $6,620.70 that the United States already agreed to pay through Plaintiff's bill of costs.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for fees is granted in part and denied in part and Plaintiff's motion for discovery sanctions is granted in part and denied in part.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: July 14, 2006.

Copies have been mailed to:

ALAN G. ORLOWSKY, Esq.
PATRICIA I. DEEMER, Esq.
A. G. Orlowsky, Ltd.
630 Dundee Road
Suite 125
Northbrook, IL 60062

CHRISTOPHER M. GOODSNYDER, Esq.
Perl & Goodsnyder, Ltd.
14 North Peoria
Suite 2C
Chicago, IL 60607

Attorneys for David A. Urban

ELIZABETH LAN DAVIS, Esq.
WENDY KISCH, Esq.
Tax Division
United States Department of Justice
Post Office Box 55
Washington, D.C. 20044

Attorneys for United States of America